John T. Jasnoch (CA 281605)
**SCOTT+SCOTT ATTORNEYS AT LAW LLP**
600 W. Broadway, Suite 3300
San Diego, CA  92101
Telephone: 619-233-4565
Facsimile:  619-233-0508
jjasnoch@scott-scott.com

*Counsel for Plaintiff James Alvrus
and the Proposed Class*

[Additional counsel on signature page.]

## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JAMES ALVRUS, Individually and On Behalf of All Others Similarly Situated,<br><br>Plaintiff,<br><br>v.<br><br>XPLR INFRASTRUCTURE, LP f/k/a NEXTERA ENERGY PARTNERS, LP, JOHN W. KETCHUM, BRIAN W. BOLSTER, TERRELL KIRK CREWS II, and NEXTERA ENERGY, INC.,<br><br>Defendants. | Case No. **'25CV1755 JLS  DDL**<br><br>**CLASS ACTION COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS**<br><br><u>JURY TRIAL DEMANDED</u> |

Plaintiff James Alvrus ("Plaintiff"), individually and on behalf of all others similarly situated (together, the "Class"), by his undersigned attorneys, alleges the following against XPLR Infrastructure, LP f/k/a Nextera Energy Partners, LP, John W. Ketchum, Brian W. Bolster, Terrell Kirk Crews II, and Nextera Energy, Inc. (together, the "Defendants") based upon information and belief, except as to those allegations concerning Plaintiff, which are alleged upon personal knowledge. Plaintiff's information and belief are based upon, *inter alia*, the investigation conducted by and through Plaintiff's attorneys, which included, among other things, a review of the Defendants' public documents, conference calls and announcements made by Defendants, Defendants' filings with the U.S. Securities and Exchange Commission ("SEC"), press releases and news articles regarding Defendant XPLR Infrastructure, LP f/k/a NextEra Energy Partners, LP ("XPLR"), and analysts' reports and advisories about XPLR and the industry within which it operates. Plaintiff's investigation is ongoing and Plaintiff believes that substantial additional evidentiary support will exist for the allegations set forth herein after a reasonable opportunity for discovery.

## NATURE OF THE ACTION

1.      This is a federal securities class action on behalf of the Class consisting of all persons and entities other than Defendants that purchased or otherwise acquired XPLR common units between September 27, 2023 and January 27, 2025, inclusive (the "Class Period"). This action (the "Action") seeks to recover damages caused by Defendants' violations of Sections 10(b) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act") and Rule 10b-5 promulgated thereunder against XPLR, its controlling company, and certain of its executives.[1]

---

[1] 15 U.S.C. §§78j(b), 78t(a); 17 C.F.R. §240.10b-5.

CLASS ACTION COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS

2.     XPLR acquires, owns, and manages contracted clean energy projects in the United States, including a portfolio of contracted wind and solar power projects, as well as a natural gas pipeline.  XPLR changed its name from "NextEra Energy Partners, LP" to "XPLR Infrastructure, LP" in January 2025.  For convenience and clarity, it is referred to as "XPLR" throughout this Complaint regardless of the time period discussed.

3.     Throughout the Class Period, XPLR operated as a "yieldco"—that is, a business that owns and operates fully-built and operational power generating projects, focused on delivering large cash distributions to investors.  Yieldcos are similar to the master limited partnership (MLP) structure used in the oil and gas industry and to the real estate investment trusts (REIT) used in the real estate industry.

4.     Yieldcos, including XPLR, are usually affiliates of larger energy companies and are designed to hold only operational projects that were developed by the parent energy company  in order to isolate the long-term contracted renewable energy assets and reduce risk.  Selling assets to the yieldco frees up capital for the larger energy company, thereby allowing it to use that capital to develop other projects.  In turn, the yieldco benefits by having a risk profile and dividend structure that are more attractive to institutional and retail investors.

5.     At all relevant times, Defendant NextEra Energy, Inc. ("NextEra Energy") was affiliated with and controlled XPLR and provided XPLR with potential and actual energy projects.

6.     Following the failures or reorganizations of other high-profile yieldcos beginning in 2015, XPLR was one of the last remaining yieldcos on the market. Indeed, XPLR maintained its yieldco business model while championing its ability to do so, consistently increasing the amount of its cash distributions to investors.

7.     But XPLR eventually faced the same pressures as its competitors and in September 2023, reduced its target growth rate of its unitholder cash distributions.

8.     XPLR told its investors that these reforms would place it on firm financial footing, that it would continue to increase its cash distributions at a targeted rate of 6% per year, and that those increases were secure through at least 2026, given that XPLR had sufficient capital to resolve certain financing obligations through 2025 and would not require additional equity until 2027.

9.     XPLR reiterated throughout the Class Period that its targeted unitholder distribution growth rate of 6% would continue through at least 2026 and that it had taken the necessary steps to ensure the viability of its yieldco model through at least that date.

10.    Unfortunately for investors, however, Defendants' repeated assurances that XPLR would continue to increase its distributions to shareholders and maintain the yieldco model were false and misleading. Specifically, Defendants made false and/or misleading statements and/or failed to disclose that: (i) XPLR was struggling to maintain its operations as a yieldco; (ii) Defendants temporarily relieved this issue by entering into certain financing arrangements, described herein, while downplaying the attendant risks; (iii) XPLR could not resolve those financings before their maturity date without risking significant unitholder dilution; (iv) as a result, Defendants planned to halt cash distributions to investors and instead redirect those funds to, *inter alia*, resolve those financings; (v) as a result of all the foregoing, XPLR's yieldco business model and distribution growth rate was unsustainable; and (vi) as a result, Defendants' public statements were materially false and misleading at all relevant times.

11.    The undisclosed truth emerged on January 28, 2025, when XPLR shocked investors by announcing that it would suspend entirely cash distributions to common unitholders and essentially abandon its yieldco model. In response, the

CLASS ACTION COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS

price of XPLR's common units fell from a closing price of $15.80 per unit on January 27, 2025 to a closing price of $10.49 per unit on January 29, 2025—a decline of $5.31 per unit, or nearly 35%.

12.     Through this Action, Plaintiff, on behalf of himself and the Class he seeks to represent, seeks to recover damages for the significant losses he has suffered as a result of Defendants' wrongful acts and omissions.

## JURISDICTION AND VENUE

13.     The claims asserted herein arise under and pursuant to Sections 10(b) and 20(a) of the Exchange Act and Rule 10b-5 promulgated thereunder by the SEC.[2]

14.     This Court has jurisdiction over the subject matter of this Action pursuant to 28 U.S.C. §1331 and Section 27 of the Exchange Act (15 U.S.C. §78aa).

15.     Venue is proper in this Judicial District pursuant to Section 27 of the Exchange Act (15 U.S.C. §78aa) and 28 U.S.C. §1391(b)(2).  Plaintiff is a resident in this District, reviewed Defendants' misrepresentations, and made his investment decisions based thereon in this District.

16.     In connection with the acts alleged in this Complaint, Defendants, directly or indirectly, used the means and instrumentalities of interstate commerce, including, but not limited to, the mails, interstate telephone and wire communications, and facilities of the national securities markets.

## PARTIES

17.     Plaintiff James Alvrus, as set forth in his certification attached hereto, acquired XPLR units at artificially inflated prices during the Class Period and was damaged upon the revelation of the alleged corrective disclosures.

18.     Defendant XPLR is a Delaware limited partnership with principal executive offices located at 700 Universe Boulevard, Juno Beach, Florida, 33408.

---

[2] 15 U.S.C. §§78j(b), 78t(a); 17 C.F.R. §240.10b-5.

CLASS ACTION COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS

XPLR's units trade in an efficient market on the New York Stock Exchange ("NYSE") under the ticker symbol "XIFR."  Before January 2025, XPLR was known as NextEra Energy Partners, LP and traded on the NYSE under the ticker symbol "NEP."

19.    Defendant NextEra Energy is a Florida corporation with principal executive offices located at 700 Universe Boulevard, Juno Beach, Florida, 33408. At all relevant times, NextEra Energy was affiliated with and controlled XPLR.  In addition, at all relevant times, "an indirect wholly owned subsidiary of" NextEra Energy and XPLR were parties to a management services agreement, "under which operational, management and administrative services are provided to XPLR under the direction of the board, including managing XPLR's day-to-day affairs and providing individuals to act as XPLR's executive officers."[3]  At all relevant times, XPLR and an affiliate of NextEra Energy were also parties to an agreement granting that affiliate a right-of-first-refusal over the sale of any XPLR energy asset.

20.    Defendant John W. Ketchum served as XPLR's Chief Executive Officer ("CEO") from March 1, 2022 to January 27, 2025.  Defendant Ketchum has also served as Chair of XPLR's Board of Directors since July 29, 2022.

21.    Defendant Brian W. Bolster served as XPLR's Chief Financial Officer ("CFO") from May 6, 2024 to January 27, 2025.

22.    Defendant Terrell Kirk Crews II served as XPLR's CFO from March 1, 2022 to May 6, 2024.

23.    Defendants Ketchum, Bolster, and Crews are sometimes referred to herein as the "Individual Defendants."

24.    The Individual Defendants possessed the power and authority to control the contents of XPLR's SEC filings, press releases, and other market

---

[3] XPLR Infrastructure, LP, Form 10-K (Dec. 31, 2024).

communications.  The Individual Defendants were provided with copies of XPLR's SEC filings and press releases alleged herein to be misleading prior to or shortly after their issuance and had the ability and opportunity to prevent their issuance or to cause them to be corrected.  Because of their positions with XPLR, and their access to material information available to them but not to the public, the Individual Defendants knew that the adverse facts specified herein had not been disclosed to and were being concealed from the public, and that the positive representations being made were then materially false and misleading.  The Individual Defendants are liable for the false statements and omissions pleaded herein.

## SUBSTANTIVE ALLEGATIONS

25.    XPLR acquires, owns, and manages contracted clean energy projects in the United States, including a portfolio of contracted wind and solar power projects, as well as a natural gas pipeline.

26.    Throughout the Class Period, XPLR operated as a yieldco.

27.    Yieldcos, including XPLR, are usually affiliates of larger energy companies and are designed to hold only operational projects that were developed by the parent energy company, in order to isolate the long-term contracted renewable energy assets and reduce risk.  Selling assets to the yieldco frees up capital for the larger energy company, thereby allowing it to use that capital to develop other projects.  In turn, the yieldco benefits by having a risk profile and dividend structure that are more attractive to institutional and retail investors.

28.    At all relevant times, Defendant NextEra Energy controlled XPLR and provided it with access to actual or potential energy projects for purchase.

29.    XPLR first publicly listed its units in June 2014.  At least six other renewable energy yieldcos, each affiliated with larger energy companies, went public at around the same time as XPLR, from about July 2013 through July 2015.

30.    The market valuation of these yieldcos peaked in mid-2015 and then began to decline quickly into 2016.  For example, from July 25, 2015 through February 11, 2016, these yieldcos lost over 55% of their market capitalization versus a decline of only 9.06% for the S&P 500 index.

31.    After this period of decline, six of these seven yieldcos—all except XPLR—fundamentally transformed their businesses or were delisted.  XPLR maintained its yieldco business model while championing its ability to do so, consistently increasing the amount of cash distributions to investors through September 2023.

32.    XPLR was able to hew to its yieldco model by, among other financing mechanisms, entering into various private convertible equity portfolio financing ("CEPF") arrangements.  XPLR began using CEPFs in 2018 and claimed that they "combine[d] the best attributes of other well-known convertible products."[4]

33.    CEPFs are created through a partnership structure backed by specific underlying energy assets.  Investors purchase CEPF interests with cash and receive a minority portion of the cash distributions from the underlying assets for a specified time period, generally three to 10 years.  After that time, XPLR can buyout the CEPF investor for cash or XPLR equity at a fixed return.  If XPLR elects not to do so, the underlying asset—and its cash distributions—are transferred to the CEPF investor.

34.    XPLR used the cash raised through CEPF transactions to fund acquisitions of energy projects or assets, or refinance existing debt.

35.    From 2018 through 2022, XPLR raised about $5.5 billion in financing through CEPF transactions.

---

[4] NextEra Energy Partners, *Convertible Equity Portfolio Financings*, at 13 (2020), https://www.investor.nexteraenergypartners.com/~/media/Files/N/NEP-IR/news-and-events/events/2020/12-23-2020/NEP%20CEPF%20Teach%20In%2012-23-2020.pdf

CLASS ACTION COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS

36.     But by 2023, XPLR's unit price was decreasing and interest rates were increasing, creating pressure on XPLR's financing model, including the use of CEPFs.

37.     On May 8, 2023, XPLR announced that it would shift its focus solely to renewable energy projects and sell its natural gas pipeline interests.  XPLR would then use the proceeds from those sales to buy out certain CEPFs and for general corporate purposes, so that it would not have to issue additional equity through the end of 2024.

38.     In addition, NextEra Energy agreed to suspend the management fee paid to it by XPLR through 2026, to allow XPLR additional cash flow to make up for the cash flow that would be lost through the sale of XPLR's natural gas pipeline interests.

39.     Unfortunately for XPLR, interest rates continued to rise, increasing pressure on XPLR's financing model.  On September 27, 2023, XPLR announced that it was cutting its target annual distribution growth rate from 12 to 15% to 5 to 8%.

40.     Specifically, on September 27, 2023, XPLR issued a press release that announced that it was "revising its growth rate to better position the partnership to continue to deliver long-term value for unitholders" and that XPLR was "revising its limited partner distribution per unit growth rate to 5% to 8% per year through at least 2026, with a target growth rate of 6%."[5]

41.     The September 2023 Press Release further quoted Defendant Ketchum, XPLR's Chairman and CEO, who stated, "NextEra Energy Partners is revising its

---

[5] Press Release, XPLR Infrastructure, NextEra Energy Partners, LP revises growth expectations and limits equity needs (Sept. 27, 2023) (the "September 2023 Press Release").

CLASS ACTION COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS

1  long-term growth rate expectations for limited partner distributions to increase its

2  flexibility as it continues to execute on its growth opportunities."

3      42.    The September 2023 Press Release also quoted Defendant Ketchum

4  stating that "[t]ighter monetary policy and higher interest rates obviously affect the

5  financing needed to grow distributions at 12%, and the burden of financing this

6  growth has had an impact on [XPLR's] unit price and yield.  In the current market

7  environment, the partnership believes revising its growth expectations for now is the

8  appropriate decision for unitholders and better positions it to continue to deliver

9  long-term value."

10      43.    The September 2023 Press Release also stated that "[b]y reducing its

11  growth rate and executing on its previously announced transition plans as outlined

12  in May [2023], which includes the sale of the natural gas pipelines and the buyouts

13  of the convertible equity portfolio financing payments due through 2025, NextEra

14  Energy Partners does not expect to require growth equity to meet its revised growth

15  expectations until 2027" and that "[i]f favorable market conditions exist, the

16  partnership may elect to opportunistically issue equity, which would likely be

17  executed through its at-the-market equity issuance program."

18      44.    The September 2023 Press Release further stated that "NextEra Energy

19  Partners also plans to repower the majority of its wind portfolio in the coming years,

20  which it believes can be accomplished at attractive cash available for distribution

21  (CAFD) yields.  It also expects to continue to look to acquire wind, solar and storage

22  assets from NextEra Energy . . . and other third parties at favorable yields."

23      45.    About this, the September 2023 Press Release quoted Defendant

24  Ketchum as stating that "[r]educing growth expectations will allow [XPLR] to focus

25  on higher-yielding growth opportunities, such as organic repowerings in the short-

26  to medium-term, and reduce new capital requirements."  Defendant Ketchum

27  continued: "Over the near and longer term, NextEra Energy['s] industry-leading

28

portfolio of renewables projects, which is expected to total up to 58 gigawatts through 2026, together with organic growth and third-party acquisitions, will continue to provide [XPLR] with excellent growth opportunities.    Through continued execution of its plans, [XPLR] is charting a course to a sustainable future with significant growth visibility."

46.    On January 25, 2024, XPLR held an investor and analyst conference call in connection with the release of its financial results for the fourth quarter of 2023.[6]  During the January 2024 Call, Defendant Ketchum, XPLR's CEO, stated that XPLR was focused on "executing against the partnership's transition plans and delivering an LP distribution growth target of 6% through at least 2026."

47.    Discussing the distribution cut in September 2023, Ketchum stated that "[l]ast September, we made the tough decision to reduce the target distribution growth rate to 6% when [XPLR] no longer benefited from a competitive cost to capital. With a growth rate now comparable to its peers, we are focused on the partnership's cost to capital improving, which is critical for its future success. Towards that end, we are evaluating alternatives to address the remaining convertible equity portfolio financings with equity buyout obligations in 2027 and beyond. We are executing against the transition plans and with the closing of the Texas Pipeline portfolio sale, the partnership has addressed two of the three near-term convertible equity portfolio financings. The STX Midstream convertible equity portfolio financing has been extinguished and we have sufficient proceeds available to complete the NEP Renewables to buyouts that are due in June 2024 and 2025. The third convertible equity portfolio financing associated with the Meade natural gas pipeline assets is expected to be addressed in 2025."

---

[6] NextEra Energy Partners, LP, Q4 2023 Earnings Call (Jan. 25, 2024) (the "January 2024 Call").

48.    Defendant Ketchum also assured investors that "[l]ooking ahead to 2024 and beyond, [XPLR] does not expect t[o] need an[] acquisition in 2024 to meet the 6% growth and LP distributions per unit target and the partnership does not expect to require growth equity until 2027."

49.    Defendant Crews, XPLR's CFO, stated that "[f]rom an updated base of our fourth quarter 2023 distribution per common unit and an annualized rate of $3.52, we continue to see 5% to 8% growth per year in LP distributions per unit with a current target of 6% growth per year as being a reasonable range of expectations through at least 2026. We continue to expect the partnership payout ratio to be in the mid-90s through 2026."

50.    During the January 2024 Call, an analyst from Guggenheim Securities, LLC ("Guggenheim") asked about whether equity investors could help XPLR with its 2026 "growth and financing issues."  Defendants Crews responded, in relevant part, that XPLR was "exploring a number of opportunities and alternatives for addressing the convertible equity portfolio financing that are coming due in 2027 and beyond."

51.    On April 23, 2024, XPLR held an investor and analyst conference call in connection with the release of its financial results for the first quarter of 2024.[7] During the April 2024 Call, Defendant Crews, XPLR's CFO, stated that XPLR "continue[s] to focus on executing against the partnership's transition plan and delivering an LP distribution target of 6% through at least 2026."  To that end, Defendant Crews explained that XPLR "bought out the STX Midstream convertible equity portfolio financing in 2023 and ha[s] sufficient proceeds available from the Texas pipeline portfolio sale to complete the NEP Renewables II . . . buyout due in June 2024 and 2025" and that "[t]he third convertible equity portfolio financing

---

[7] NextEra Energy Partners, LP, Q1 2024 Earnings Call (Apr. 23, 2024) (the "April 2024 Call").

associated with the . . . [Meade] natural gas pipeline assets is expected to be addressed in 2025."

52.    During the April 2024 Call, Defendant Crews also explained that XPLR's "plan for the near-term convertible equity portfolio financing" was "well understood" and that XPLR "remain[ed] focused on the partnership's cost improving, which is critical for its success."  Defendant Crews added that, "[w]ith that objective in mind, we continue to evaluate alternatives to address the remaining convertible equity portfolio financing with equity buyout obligations in 2027 and beyond."

53.    As to unitholder distributions, Defendant Crews stated that XPLR "does not expect to need an acquisition this year to achieve a 6% targeted growth rate and the partnership does not expect to require growth equity until 2027."  He further explained that "[f]rom a base of our fourth quarter 2023 distribution per common unit at an annualized rate of $3.52, we continue to see 5% to 8% growth per year in LP distributions per unit, with a current target of 6% growth per year as being a range of expectation for at least 2026" and that XPLR "continue[d] to expect the partnerships payout ratio to be in the mid-90s through 2026."

54.    During the April 2024 Call, an analyst from Guggenheim asked whether XPLR was "advancing any longer-term resolution plans for the CEPF[s]."  Defendant Ketchum answered that XPLR had "talked about private capital raise potentially being a solution to address" the CEPFs, that there was "a lot of interest in that," and that "those discussions continue to move forward."

55.    On July 24, 2024, XPLR held an investor and analyst conference call in connection with the release of its financial results for the second quarter of 2024.[8]  During the July 2024 Call, Defendant Bolster, XPLR's CFO, stated that "[f]rom a

---

[8] NextEra Energy Partners, LP, Q2 2024 Earnings Call (July 24, 2024) (the "July 2024 Call").

CLASS ACTION COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS

base of our fourth quarter 2023 distribution per common unit at an annualized rate of $3.52, the partnership continues to see 5% to 8% growth per year in LP distributions per unit with a current target of 6% growth per year as being a reasonable range of expectations through at least 2026." Bolster added that XPLR "expects the partnership payout ratio to be in the mid- to high 90s through 2026" and "expect[s] the annualized rate of the fourth quarter 2024 distribution that is payable on February 2025 . . . to be $3.73 per common unit."

56.     Defendant Bolster also remarked that "[i]n terms of next steps" for XPLR, "the partnership is continuing to look at all options to secure a competitive cost of capital" and "address the remaining convertible equity portfolio financing buyouts," but that "the partnership's 6% distribution growth target remains for now" and that XPLR "does not need an acquisition-related financing in 2024 to meet its 6% target and does not need [growth] equity until 2027." Expanding on this, Bolster stated that XPLR "owns a large portfolio of high-quality, long-term contracted clean energy assets and the partnership has attractive organic growth from the repowering of its existing portfolio."

57.     During the July 2024 Call, a Guggenheim analyst asked for "a sense on timing" of "what range of options" XPLR was "thinking about" with respect to its financing and "how confident are you we can get something done at favorable pricing before the dividend goes under some level of pressure in '27?"

58.     Defendant Ketchum responded that XPLR was "looking at various solutions around . . . how do you tackle those back-end CEPFs in a constructive way that makes sense in terms of the cost of capital that would be required to do that and then how do we put [XPLR] in a better position for success going forward." He further explained that XPLR was "exploring all alternatives. So we've mentioned private capital as one potential avenue there as well. The good thing is that we have time. We have time in 2024. We've said to the market, we don't have to do

anything.  We don't have any drops planned for '24, don't have growth equity needs until '27."

59.    On October 23, 2024, XPLR held an investor and analyst conference call in connection with the release of its financial results for the third quarter of 2024.[9]  During the October 2024 Call, Defendant Bolster stated that XPLR was continuing "to evaluate alternatives to address its remaining convertible equity portfolio financing obligations and its cost of capital" and also continuing to focus "on its capital structure and the potential for redeployment of more cash flow toward driving organic cash flow growth."

60.    Defendant Bolster explained that "[g]iven the demand for power, [XPLR] has many ways in which it can seek to grow, which could include not only acquiring assets but also wind re-powerings and potential other organic growth opportunities.  [XPLR] plans to complete its review by no later than the fourth quarter 2024 call and intends to provide its distribution and run-rate cash available for distribution expectations at that time."

## MATERIALLY FALSE AND MISLEADING STATEMENTS ISSUED DURING THE CLASS PERIOD

61.    As set forth below, throughout the Class Period, Defendants made a series of statements that misled investors about the stability of XPLR's yieldco model and its ability to continue to pay unitholder distributions through at least 2026. Defendants' repeated assurances that XPLR would continue to increase its distributions to shareholders and maintain the yieldco model were false and misleading.  Specifically, Defendants made false and/or misleading statements and/or failed to disclose that: (i) XPLR was struggling to maintain its operations as a yieldco; (ii) Defendants temporarily relieved this issue by entering into certain

---

[9] NextEra Energy Partners, LP, Q3 2024 Earnings Call (Oct. 23, 2024) (the "October 2024 Call").

financing arrangements, described herein, while downplaying the attendant risks; (iii) XPLR could not resolve those financings before their maturity date without risking significant unitholder dilution; (iv) as a result, Defendants planned to halt cash distributions to investors and instead redirect those funds to, *inter alia*, resolve those financings; (v) as a result of all the foregoing, XPLR's yieldco business model and distribution growth rate was unsustainable; and (vi) as a result, Defendants' public statements were materially false and misleading at all relevant times.

62.    The Class Period begins on September 27, 2023.  On that day, XPLR issued the September 2023 Press Release and announced that it was "revising its limited partner distribution per unit growth rate to 5% to 8% per year through at least 2026, with a target growth rate of 6%."  The September 2023 Press Release also stated that "[b]y reducing its growth rate and executing on its previously announced transition plans as outlined in May [2023], which includes the sale of the natural gas pipelines and the buyouts of the convertible equity portfolio financing payments due through 2025, [XPLR] does not expect to require growth equity to meet its revised growth expectations until 2027."

63.    The foregoing was false and misleading because these statements conveyed to investors that XPLR's lowering of its distribution target growth rate to 6% "through at least 2026," its plans to address its CEPF financing through 2025, and its expectation not to require growth equity until 2027 conveyed that XPLR's unitholder distribution and yieldco model were secure through at least 2026.  In reality, that was not true, as set forth in Paragraph 61 above.

64.    During the January 2024 Call, Defendants stated that XPLR was focused on "executing against the partnership's transition plans and delivering an LP distribution growth target of 6% through at least 2026" and that XPLR "continue[s] to see 5% to 8% growth per year in LP distributions per unit with a

CLASS ACTION COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS

current target of 6% growth per year as being a reasonable range of expectations through at least 2026."

65.    Defendants also stated during the January 2024 Call that XPLR had "sufficient proceeds" to complete financing buyouts in 2024 and 2025 and that XPLR "does not expect to require growth equity until 2027."

66.    In response to an analyst question during the January 2024 Call, Defendants stated that XPLR was "exploring a number of opportunities and alternatives for addressing the convertible equity portfolio financing that are coming due in 2027 and beyond."

67.    The foregoing statements in Paragraphs 64 through 66 were false and misleading because these statements conveyed to investors that XPLR's unitholder distributions and yieldco model were secure through at least 2026, including because XPLR had sufficient proceeds to complete financing buyouts through 2025 and did not expect to require additional equity until 2027.  In reality, that was not true, as set forth in Paragraph 61 above.

68.    During the April 2024 Call, Defendants stated that XPLR "continue[s] to focus on executing against the partnership's transition plan and delivering an LP distribution target of 6% through at least 2026" and that XPLR had "sufficient proceeds available" to complete financing buyouts in 2024 and 2025.  Defendants also stated that XPLR's "plan for the near-term convertible equity portfolio financing" was "well understood" and that XPLR continued "to evaluate alternatives to address the remaining convertible equity portfolio financing with equity buyout obligations in 2027 and beyond."

69.    The foregoing statements were false and misleading because these statements conveyed to investors that XPLR's unitholder distributions and yieldco model were secure through at least 2026, including because XPLR had sufficient proceeds to complete financing buyouts through 2025 and did not expect to require

1  additional equity until 2027.  In reality, that was not true, as set forth in Paragraph
2  61 above.

3       70.    During the July 2024 Call, Defendants stated that XPLR "continues to
4  see 5% to 8% growth per year in LP distributions per unit with a current target of
5  6% growth per year as being a reasonable range of expectations through at least
6  2026."  Defendants also stated that XPLR's "6% distribution growth target remains
7  for now" and that XPLR "does not need an acquisition-related financing in 2024 to
8  meet its 6% target and does not need [growth] equity until 2027."  In response to an
9  analyst question during the July 2024 Call about resolving XPLR's CEPFs,
10  Defendant Ketchum stated that "[t]he good thing is that we have time.  We have time
11  in 2024.  We've said to the market, we don't have to do anything.  We don't have
12  any drops planned for '24, don't have growth equity needs until '27."

13       71.    The foregoing statements were false and misleading because these
14  statements conveyed to investors that XPLR's unitholder distributions and yieldco
15  model were secure through at least 2026, including because XPLR did not expect to
16  require additional equity until 2027.  In reality, that was not true, as set forth in
17  Paragraph 61 above.

18       72.    During the October 2024 Call, Defendants stated that XPLR planned to
19  complete its review of financing options "by no later than the fourth quarter 2024
20  call and intends to provide its distribution and run rate cash available for distribution
21  expectations at that time."

22       73.    The foregoing statements were false and misleading because these
23  statements conveyed to investors that XPLR's unitholder distributions and yieldco
24  model were secure, notwithstanding XPLR's review of its financing options.  In
25  reality, that was not true, as set forth in Paragraph 61 above.

26

27

28

## THE TRUTH EMERGES

74.    The undisclosed truth emerged on January 28, 2025, when XPLR shocked investors by announcing that it would suspend entirely cash distributions to common unitholders and essentially abandon its yieldco model.

75.    Specifically, XPLR issued a press release announcing a "strategic respositioning" and stating that it was "moving from a business model that focused almost entirely on raising new capital to acquire assets while distributing substantially all of its excess cash flows to unitholders to a model in which XPLR Infrastructure utilizes retained operating cash flows to fund attractive investments."[10]  The January 2025 Press Release continued: "Accordingly, XPLR Infrastructure is announcing the suspension of distributions to unitholders for an indefinite period.  By taking these actions today, XPLR Infrastructure adopts a plan that eliminates the need for equity issuances."

76.    The January 2025 Press Release quoted Defendant Ketchum as stating: "We believe today's strategic repositioning of XPLR Infrastructure's business model will unlock the value of the strong cash flows in the existing portfolio and best position the partnership to allocate cash flow optimally for unitholders in the future." Ketchum continued, "Suspending the distribution is a decision we do not take lightly.  However, by doing so, the partnership will have a consistent source of capital which it can invest back in the business at attractive returns.  We believe using our excess cash flow to buy out selected convertible equity portfolio financings and invest in our existing portfolio of high-quality assets are our best and most immediate value-enhancing opportunities for unitholders.  Beyond these investments, we expect to have many other opportunities to reinvest our cash flow driven by the unprecedented demand for power in our country and the infrastructure

---

[10] Press Release, XPLR Infrastructure, XPLR Infrastructure, LP announces strategic repositioning (Jan. 28, 2025) (the "January 2025 Press Release").

required to serve it.  The changes we are announcing today are intended to eliminate the need to issue equity, while enabling the partnership to both preserve its balance sheet capacity to facilitate near-term financings and maintain greater financial flexibility in the future to maximize unitholder value."

77.    In addition, XPLR announced that it had appointed a new CEO and CFO.

78.    Also on January 28, 2025, XPLR held a conference call for investors and analysts, during which Defendant Bolster stated:

> When XPLR was established in 2014, we expected its basic function to be to acquire contracted clean energy assets and to hold those assets in a portfolio that delivered relatively low risk and growing cash flows. Other opportunities for growth, of course, were not ruled out, but this is expected to be the main path to growth at least for some years.
>
> Explicit in this model of growth driven by acquisitions was the commitment to pay out a very high proportion of annual cash flows, which necessarily meant that every new acquisition would bring with it a need for new equity issuances. For many years, this model worked. However, as distributions per unit grew, the partnership needed to acquire more assets and thus issue more equity to support its distribution growth rate. As our equity needs grew, the existing public equity market for yieldcos proved to be more limited, creating the need for substantial discounting and thus increased dilution. Therefore, we look to private capital as a financing source to help support our growing equity needs and maintain our distribution growth rate.
>
> When issued, the CEPF offered a new equity -- offered new equity capital to support acquisitions. Unfortunately, as we began to buy out CEPF obligations by issuing equity in 2021, there was significant downward selling pressure on the unit price. If we had continued to issue equity to buy out the CEPF, it would have resulted in significant dilution to unitholders. Over this time, it has become clear that utilizing the significant cash available to XPLR to fund these buyouts, instead of distributing that cash and issuing new equity, results in what we believe is a better economic value proposition for unitholders over the longer term.

79.    The foregoing disclosures shocked the market.    As reported in one of several *Bloomberg* articles addressing XPLR that day, the cash distribution

19

suspension "marked the first time the company had cut or suspended its distribution, according to a representative," and "[c]onsensus expectations had been for a 34% cut."[11]   In other words, although the market had anticipated a cut to XPLR's cash distribution, it had been unprepared for a complete *suspension* of that distribution, all at once, after XPLR's consistent history of consecutively raising its cash distribution, despite its CEPF obligations.

80.    On this news, the price of XPLR's common units fell from a closing price of $15.80 per unit on January 27, 2025 to a closing price of $10.49 per unit on January 29, 2025—a decline of $5.31 per unit, or nearly 35%.

81.    As a result of Defendants' wrongful acts and omissions, and the precipitous decline in the market value of the XPLR's common units, Plaintiff and other Class members have suffered significant losses and damages.

## PLAINTIFF'S CLASS ACTION ALLEGATIONS

82.    Plaintiff brings this Action as a class action pursuant to Federal Rule of Civil Procedure 23(a) and (b)(3) on behalf of the Class, consisting of all those who purchased or otherwise acquired XPLR common units during the Class Period, that was damaged upon the revelation of the alleged corrective disclosures.[12]  Excluded from the Class are Defendants herein, the officers and directors of XPLR, at all relevant times, members of their immediate families and their legal representatives, heirs, successors or assigns and any entity in which Defendants have or had a controlling interest.

83.    The members of the Class are so numerous that joinder of all members is impracticable.  Throughout the Class Period, XPLR common units were actively

---

[11] Josh Saul & Will Wade, *XPLR Slumps After Pausing Investor Payouts on Strategy Shift*, BLOOMBERG (Jan. 28, 2025) https://news.bloombergtax.com/in-house-counsel/xplr-slumps-after-pausing-investor-payouts-on-strategy-shift-1?context=search&index=0

[12] Fed. R. Civ. P. 23(a), (b)(3).

traded on the NYSE.  While the exact number of Class members is unknown to Plaintiff at this time and can be ascertained only through appropriate discovery, Plaintiff believes that there are hundreds or thousands of members in the proposed Class.  Record owners and other members of the Class may be identified from records maintained by XPLR or its transfer agent and may be notified of the pendency of this Action by mail and/or email, using the form of notice similar to that customarily used in securities class actions.

84.    Plaintiff's claims are typical of the claims of the members of the Class as all members of the Class are similarly affected by Defendants' wrongful conduct in violation of federal law that is complained of herein.

85.    Plaintiff will fairly and adequately protect the interests of the members of the Class and has retained counsel competent and experienced in class and securities litigation.  Plaintiff has no interests antagonistic to or in conflict with those of the Class.

86.    Common questions of law and fact exist as to all members of the Class and predominate over any questions solely affecting individual members of the Class.  Among the questions of law and fact common to the Class are:

- whether the federal securities laws were violated by Defendants' acts as alleged herein;

- whether statements made by Defendants to the investing public during the Class Period misrepresented material facts about the business, operations and management of XPLR;

- whether the Individual Defendants caused XPLR to issue false and misleading statements during the Class Period;

- whether Defendants acted knowingly or recklessly in issuing false and misleading financial statements;

- whether the price of XPLR common units was inflated during the Class Period due to the Defendants' conduct complained of herein; and

- whether the members of the Class have sustained damages and, if so, what is the proper measure of damages.

CLASS ACTION COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS

87.    A class action is superior to all other available methods for the fair and efficient adjudication of this controversy since joinder of all members is impracticable.  Furthermore, as the damages suffered by individual Class members may be relatively small, the expense and burden of individual litigation make it impossible for members of the Class to individually redress the wrongs done to them. There will be no difficulty in the management of this Action as a class action.

88.    Plaintiff will rely, in part, upon the presumption of reliance established by the fraud-on-the-market doctrine in that:

- Defendants made public misrepresentations or failed to disclose material facts during the Class Period;

- the omissions and misrepresentations were material;

- XPLR common units traded in an efficient market;

- XPLR's common units were liquid and traded with moderate to heavy volume during the Class Period;

- XPLR traded on the NYSE and was covered by multiple analysts;

- the misrepresentations and omissions alleged would tend to induce a reasonable investor to misjudge the value of XPLR's common units; and

- Plaintiff and members of the Class purchased, acquired and/or sold XPLR common units between the time the Defendants failed to disclose or misrepresented material facts and the time the true facts were disclosed, without knowledge of the omitted or misrepresented facts.

89.    Based upon the foregoing, Plaintiff and the members of the Class are entitled to a presumption of reliance upon the integrity of the market.

90.    Alternatively, Plaintiff and the members of the Class are entitled to the presumption of reliance established by the Supreme Court in *Affiliated Ute Citizens of the State of Utah v. United States*, 406 U.S. 128 (1972), as Defendants omitted material information in their Class Period statements in violation of a duty to disclose such information, as detailed above.

1

## **UNDISCLOSED ADVERSE FACTS**

2      91.    The market for XPLR's common units was open, well-developed, and

3    efficient at all relevant times.  As a result of these materially false and/or misleading

4    statements, and/or failures to disclose, XPLR's common units traded at artificially

5    inflated prices during the Class Period.  Plaintiff and other members of the Class,

6    relying upon the integrity of the market price of XPLR's common units and market

7    information relating to XPLR, purchased or otherwise acquired XPLR's common

8    units and have been damaged thereby.

9      92.    During the Class Period, Defendants materially misled the investing

10    public, thereby inflating the price of XPLR's common units, by publicly issuing false

11    and/or misleading statements and/or omitting to disclose material facts necessary to

12    make Defendants' statements, as set forth herein, not false and/or misleading.  The

13    statements and omissions were materially false and/or misleading because they

14    failed to disclose material adverse information and/or misrepresented the truth about

15    XPLR's business, operations, and prospects as alleged herein.

16      93.    At all relevant times, the material misrepresentations and omissions

17    particularized in this Complaint directly or proximately caused or were a substantial

18    contributing cause of the damages sustained by Plaintiff and other members of the

19    Class.  As described herein, during the Class Period, Defendants made or caused to

20    be made a series of materially false and/or misleading statements about XPLR's

21    financial well-being and prospects.  These material misstatements and/or omissions

22    had the effect of creating, in the market, an unrealistically positive assessment of

23    XPLR and its financial well-being and prospects, including its viability as a yieldco

24    and its ability to continue paying unitholder distributions through 2026, thus causing

25    XPLR's common units to be overvalued and artificially inflated at all relevant times.

26    Defendants' materially false and/or misleading statements during the Class Period

27    resulted in Plaintiff and other members of the Class purchasing XPLR's common

28

1   units at artificially inflated prices, thus causing the damages complained of herein

2   when the truth was revealed.

3                                    **LOSS CAUSATION**

4         94.    Defendants' wrongful conduct, as alleged herein, directly and

5   proximately caused the economic loss suffered by Plaintiff and the Class.

6         95.    During the Class Period, Plaintiff and the Class purchased XPLR's

7   common units at artificially inflated prices and were damaged thereby.  The price of

8   XPLR's common units significantly declined when the misrepresentations made to

9   the market, and/or the information alleged herein to have been concealed from the

10  market, and/or the effects thereof, were revealed, causing investors' losses.

11                                    **SCIENTER**

12        96.    As alleged herein, Defendants acted with scienter since Defendants

13  knew that: (i) the public documents and statements issued or disseminated in the

14  name of XPLR were materially false and/or misleading; (ii) such statements or

15  documents would be issued or disseminated to the investing public; and (iii)

16  knowingly and substantially participated or acquiesced in the issuance or

17  dissemination of such statements or documents as primary violations of the federal

18  securities laws.  As set forth elsewhere herein in detail, the Individual Defendants,

19  by virtue of their receipt of information reflecting the true facts regarding XPLR,

20  their control over, and/or receipt, and/or modification of XPLR's allegedly

21  materially misleading misstatements, and/or their associations with XPLR which

22  made them privy to confidential proprietary information concerning XPLR,

23  participated in the fraudulent scheme alleged herein.

24                                   **NO SAFE HARBOR**

25        97.    The statutory safe harbor provided for forward-looking statements

26  under certain circumstances does not apply to any of the allegedly false statements

27  pleaded in this Complaint.  Certain of the statements alleged to be false and

28

CLASS ACTION COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS

misleading herein relate to then-existing facts and conditions. In addition, to the extent certain of the statements alleged to be false may be characterized as forward looking, there was not meaningful cautionary statements identifying important factors that could cause actual results to differ materially from those in the purportedly forward-looking statements. In the alternative, to the extent that the statutory safe harbor is determined to apply to any forward-looking statements pleaded herein, Defendants are liable for those false forward-looking statements because at the time each of those forward-looking statements was made, the speaker had actual knowledge that the forward-looking statement was materially false or misleading, and/or the forward-looking statement was authorized or approved by an executive officer of XPLR who knew that the statement was false when made.

## COUNT I
### (Violations of Section 10(b) of the Exchange Act and Rule 10b-5 Promulgated Thereunder Against XPLR and the Individual Defendants)

98. Plaintiff repeats and re-alleges each and every allegation contained above as if fully set forth herein.

99. This Count is asserted against Defendants and is based upon Section 10(b) of the Exchange Act and Rule 10b-5 promulgated thereunder by the SEC.[13]

100. During the Class Period, Defendants: (i) engaged in a plan, scheme, conspiracy and course of conduct, pursuant to which they knowingly or recklessly engaged in acts, transactions, practices, and courses of business which operated as a fraud and deceit upon Plaintiff and the other members of the Class; (ii) made various untrue statements of material facts and omitted to state material facts necessary in order to make the statements made, in light of the circumstances under which they

---

[13] 15 U.S.C. §78j(b); 17 C.F.R. §240.10b-5.

were made, not misleading; and (iii) employed devices, schemes and artifices to defraud in connection with the purchase and sale of securities. Such scheme was intended to, and, throughout the Class Period, did: (i) deceive the investing public, including Plaintiff and other Class members, as alleged herein; (ii) artificially inflate and maintain the market price of XPLR common units; and (iii) cause Plaintiff and other members of the Class to purchase or otherwise acquire XPLR common units at artificially inflated prices. In furtherance of this unlawful scheme, plan and course of conduct each of the Defendants took the actions set forth herein.

101. Pursuant to the above plan, scheme, conspiracy and course of conduct, each of the Defendants participated directly or indirectly in the preparation and/or issuance of the statements and documents described above, including statements made to securities analysts and the media that were designed to influence the market for XPLR common units. These statements were materially false and misleading in that they failed to disclose material adverse information and misrepresented the truth about XPLR's finances and business prospects.

102. By virtue of their positions at XPLR, Defendants had actual knowledge of the materially false and misleading statements and material omissions alleged herein and intended thereby to deceive Plaintiff and the other members of the Class, or, in the alternative, acted with reckless disregard for the truth in that they failed or refused to ascertain and disclose such facts that would reveal the materially false and misleading nature of the statements made, although such facts were readily available to Defendants. Said acts and omissions of Defendants were committed willfully or with reckless disregard for the truth. In addition, each Defendant knew or recklessly disregarded that material facts were being misrepresented or omitted as described above.

103. Information showing that Defendants acted knowingly or with reckless disregard for the truth is peculiarly within Defendants' knowledge and control. As

1  the executives of XPLR and/or NextEra Energy, the Individual Defendants had

2  knowledge of the details of XPLR's internal affairs.

3       104.   The Individual Defendants are liable both directly and indirectly for the

4  wrongs complained of herein.  Because of their positions of control and authority,

5  the Individual Defendants were able to and did, directly or indirectly, control the

6  content of the statements of XPLR.  As officers and/or directors of a publicly held

7  entity, the Individual Defendants had a duty to disseminate timely, accurate, and

8  truthful information with respect to XPLR's businesses, operations, future financial

9  condition and future prospects.    As a result of the dissemination of the

10  aforementioned false and misleading public statements, the market price of XPLR

11  common units was artificially inflated throughout the Class Period.  In ignorance of

12  the adverse facts concerning XPLR's business and financial condition which were

13  concealed by Defendants, Plaintiff and the other members of the Class purchased or

14  otherwise acquired XPLR common units at artificially inflated prices and relied

15  upon the price of the securities, the integrity of the market for the securities, and/or

16  upon statements disseminated by Defendants, and were damaged thereby.

17       105.   During the Class Period, XPLR common units traded in an active and

18  efficient market.   Plaintiff and the other members of the Class, relying on the

19  materially false and misleading statements described herein, which the Defendants

20  made, issued or caused to be disseminated, or relying upon the integrity of the

21  market, purchased or otherwise acquired common units of XPLR at prices artificially

22  inflated by Defendants' wrongful conduct.  Had Plaintiff and the other members of

23  the Class known the truth, they would not have purchased or otherwise acquired said

24  securities, or would not have purchased or otherwise acquired them at the inflated

25  prices that were paid.  At the time of the purchases and/or acquisitions by Plaintiff

26  and the Class, the true value of XPLR common units was substantially lower than

27  the prices paid by Plaintiff and the other members of the Class.  The market price of

28

1  XPLR common units declined sharply upon public disclosure of the facts alleged

2  herein to the injury of Plaintiff and Class members.

3      106.   By reason of the conduct alleged herein, Defendants knowingly or

4  recklessly, directly or indirectly, have violated Section 10(b) of the Exchange Act

5  and Rule 10b-5 promulgated thereunder.[14]

6      107.   As a direct and proximate result of Defendants' wrongful conduct,

7  Plaintiff and the other members of the Class suffered damages in connection with

8  their respective purchases, acquisitions and sales of the XPLR's common units

9  during the Class Period, upon the disclosure that XPLR had been disseminating

10  misrepresented information to the investing public.

**COUNT II**
**(Violations of Section 20(a) of the Exchange Act**
**Against all Defendants)**

13      108.   Plaintiff repeats and re-alleges each and every allegation contained in

14  the foregoing paragraphs as if fully set forth herein.

15      109.   During the Class Period, the Individual Defendants and NextEra

16  Energy participated in the operation and management of XPLR, and conducted and

17  participated, directly and indirectly, in the conduct of XPLR's business affairs.

18  Because of their senior positions and general corporate control over XPLR, they

19  knew the adverse non-public information about XPLR's misstatements.

20      110.   As officers and/or directors of a publicly-owned entity, the Individual

21  Defendants had a duty to disseminate accurate and truthful information with respect

22  to XPLR's financial condition and results of operations, and to correct promptly any

23  public statements issued by XPLR which had become materially false or misleading.

24      111.   Because of their positions of control and authority as senior officers and

25  NextEra Energy's general corporate control over XPLR, the Individual Defendants

---

[14] 15 U.S.C. § 78j(b); 17 C.F.R. §240.10b-5.

and NextEra Energy were able to, and did, control the contents of the various public statements which XPLR disseminated in the marketplace during the Class Period. Throughout the Class Period, the Individual Defendants and NextEra Energy exercised their power and authority to cause XPLR to engage in the wrongful acts complained of herein.  The Individual Defendants and NextEra Energy, therefore, were "controlling person[s]" of XPLR within the meaning of Section 20(a) of the Exchange Act.[15]  In this capacity, they participated in the unlawful conduct alleged which artificially inflated the market price of XPLR common units.

112.   Each of the Individual Defendants and NextEra Energy, therefore, acted as a controlling person of XPLR.  By reason of their senior management positions and general corporate control over XPLR, each of the Individual Defendants and NextEra Energy had the power to direct the actions of, and exercised the same to cause, XPLR to engage in the unlawful acts and conduct complained of herein.  Each of the Individual Defendants and NextEra Energy exercised control over the general operations of XPLR and possessed the power to control the specific activities which comprise the primary violations about which Plaintiff and the other members of the Class complain.

113.   In addition, XPLR controlled the Individual Defendants and its other officers and employees.

114.   By reason of the above conduct, Defendants are liable pursuant to Section 20(a) of the Exchange Act.[16]

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff and the Class demand judgment against Defendants as follows:

---

[15] 15 U.S.C. §78t(a).

[16] *Id.*

CLASS ACTION COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS

1      A.    determining that the instant action may be maintained as a class action

2  under Rule 23 of the Federal Rules of Civil Procedure, and certifying Plaintiff as the

3  Class representative;

4      B.    requiring Defendants to pay damages sustained by Plaintiff and the

5  Class by reason of the acts and transactions alleged herein;

6      C.    awarding Plaintiff and the other members of the Class prejudgment and

7  post- judgment interest, as well as their reasonable attorneys' fees, expert fees and

8  other costs; and

9      D.    awarding such other and further relief as this Court may deem just and

10  proper.

11                   **<u>DEMAND FOR TRIAL BY JURY</u>**

12      Plaintiff and the Class hereby demand a trial by jury.

13

14  DATED:  July 9, 2025      **SCOTT+SCOTT ATTORNEYS AT LAW LLP**

15                        /s/ John T. Jasnoch

16                        John T. Jasnoch (CA 281605)
600 W. Broadway, Suite 3300

17                        San Diego, CA  92101
Tel.: (619) 233-4565

18                        Fax:  (619) 233-0508
jjasnoch@scott-scott.com

19                        Thomas L. Laughlin, IV (*pro hac vice* forthcoming)

20                        **SCOTT+SCOTT ATTORNEYS AT LAW LLP**
The Helmsley Building

21                        230 Park Avenue, 24th Floor
New York, NY 10169

22                        Tel: (212) 223-6444
Fax: (212) 223-6334

23                        tlaughlin@scott-scott.com

24                        *Counsel for Plaintiff*
*James Alvrus and the Proposed Class*

25

26

27

28

CLASS ACTION COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS

1    Brian J. Schall (CA 290685)
2    **THE SCHALL LAW FIRM**
     2049 Century Park East, Suite 2460
     Los Angeles, CA 90067
3    Tel.: (310) 301-3335
     Fax: (310) 388-0192
4    brian@schallfirm.com

5    *Additional Counsel for Plaintiff James Alvrus*

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

CLASS ACTION COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS